# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DR. CHANDAN VORA, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   2:11-cv-00278-JAW ) |
| THEARY PERRY, et al., | ) ) |
|     Defendants | ) |

## RECOMMENDED DECISION SCREENING COMPLAINT UNDER 28 U.S.C. § 1915

Doctor Chandan Vora has filed a civil action in the District of Maine against Theary Perry and the Progressive Insurance Company. Vora lists 634 Menocher Boulevard, Johnston, Pennsylvania as her address. She indicates that Perry lives in Sanford, Maine. There was an auto accident in Sanford, Maine involving Perry and Vora on July 28, 2005.[1] This case has been docketed as a personal injury suit because Vora has not specified her theory of liability up front and she is complaining about these two defendants' conduct vis-à-vis an automobile accident. However, the overall tenor of the complaint is one of an ongoing conspiracy against Vora by multiple individuals and entities including violations of the federal Racketeer Influencing and Corrupt Organizations Act (RICO). I now recommend that this court summarily dismiss this complaint for failure to state a claim.

## DISCUSSION

On July 25, 2011, I granted Vora leave to proceed in forma pauperis and issued a show cause order requiring Vora to file an amended complaint that set forth the basis for her claim surrounding the Maine traffic accident that was identified in the accident report that she filed with her original pleading. Vora filed a twenty-two page response to that order (Doc. No. 5)

---

[1]     (Doc. No. 1-2, Page ID No. 13.)

which does not mention the Maine traffic accident at all. Vora does discuss her "accident cases" and litigation involving insurance companies, not necessarily Progressive Insurance, wherein a guardian ad litem was involved as well as a law firm that deducted its fees from insurance money which Vora claims she was entitled to receive. (See Resp. OSC at 16-17, Doc. No. 5.). These accident cases may have been removed to federal court and subsequently remanded to the Pennsylvania state courts. (Id.) As best I can tell, this sequence of events is not related to the Sanford, Maine accident at all.

The remainder of Vora's pleading details the difficulty she has experienced with housing, public transportation, and as a criminal defendant in the courts of Pennsylvania. Apparently the home in which she was living in Johnston, Pennsylvania, has been condemned because the authorities have deemed it uninhabitable and she has been banned from using public transport by officials at the bus company. (Id. at 1.) Vora has been a defendant in actions brought by the police in Pennsylvania in what she describes as "fabricated charges," apparently including a fabricated incident involving a February 2011 fire at a dwelling where Vora resided. (Id. at 4, 6.)

In her original complaint, with regards to the July 2005 accident Vora alleges that a police report on that collision disappeared in June 2011 and she was able to get this back from the FBI on July 10, 2011. She opines: "Apparently, all of these conspirators are working together for theft of these legal papers…." (Compl. ¶ 3, Doc. No. 1.) Vora states that there was an Irish origin girl of Catholic faith in the car with Perry at the time of the accident and her identity is being suppressed to cover-up RICO activities.[2] Vora sues Progressive Insurance because it is the insurance provider for Perry. With regards to her conspiracy allegations, Vora

---

[2]    Based on the cases I have reviewed that involve Vora, I do not think that it would offend her to state that she is concerned that individuals of nationalities and religious faiths other than her own have gained some unjustified leverage based upon their national/ethnic/religious identities in their interactions with Vora, who is from India.

2

insists that Perry and Progressive Insurance are "part and parcel of conspirators" who set her house on fire in Pennsylvania in December 2010. (Compl. at 8.)

Vora explains how the resultant suffering from this 2005 accident has prevented her from preparing her gene therapy for her neurological condition. She complains of serious swelling and pain in her fingers which she ascribes to clutching the steering wheel so tightly at the time of the accident.[3]

With respect to an in forma pauperis action such as this, the United States Congress has directed: "[T]he court shall dismiss the case at any time if the court determines that -- … (B) the action…-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under 28 U.S.C. § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke v. Williams, 490 U.S. 319, 324 (1989) (citing Franklin v. Murphy, 745 F.2d 1221, 1226 (9th Cir. 1984)); accord Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Mallard v. U.S. Dist. Ct. S. D. Iowa, 490 U.S. 296, 307-308 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton, 504 U.S. at 33.

To the extent that Vora meant this to be a personal injury action based on this court's diversity jurisdiction, the complaint fails to allege facts sufficient for such a claim against either

---

[3] This is not a complete summary of Vora's allegations; Although I have considered them, I have not highlighted those that seem so far afield of the conduct of these two defendants that they do not help the discussion.

defendant.[4] I do not have before me the most basic facts of what happened, how it happened, and what the allegations of fault and insurance company liability are beyond the brief synopsis in the police report.[5] See Concord General Mut. Ins. Co. v. Hills, 345 F. Supp. 1090, 1096 (D. Me., 1972).

To the extent that she is pursuing some sort of federal civil rights conspiracy action, Vora has failed to allege a "plausible suggestion of conspiracy" between Perry and Progressive (and any of the other individuals and entities mentioned in her complaint). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 566 (2007). See also Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct 1937 (2009); Neitzke, 490 U.S. at 327-28; Purvis v. Ponte, 929 F.2d 822, 826 -827 (1st Cir. 1991). I credit that Vora believes her factual allegations of conspiracy are true but this acknowledgement does not mean that the case should not be dismissed as frivolous or for failure to state a claim that is cognizable in this court. Other courts have arrived at the same difficult conclusion concerning similar allegations, see, e.g., Mitchell v. Abel, No. 88-2438, 1989 WL 102954, 2 (9th Cir. 1989) (unpublished); Christian v. Moore, No. 3:10-CV-302-FDW-DSC, 2010 WL 3418390, 1 -2 (W.D.N.C. Aug. 30, 2010) (unpublished); Calhoon v. San Diego Police Dept., No. 10cv1629 WQH (POR),2010 WL 3184254, 1 -2 (S.D. Cal. Aug. 10, 2010) (unpublished); Hix v. Bush, No. 10-12366, 2010 WL 2560446, 1 (E.D.Mich. June 16, 2010) (unpublished); Lignell v. Catholic Church, No. 2:09-cv-1151-CW-PMW, 2010 WL 2521452, 3 -5 (D. Utah May 6, 2010) (unpublished); compare Denton v. Hernandez, 504 U.S. at 34 (vacating § 1915 dismissal for a determination of whether the frivolous factual allegations could be remedied through more specific pleading); Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994) ("Plaintiffs have not

---

[4] Vora indicates that she signed an agreement and waiver with Progressive Insurance to settle her personal injury claim for $300 but now feels that that settlement figure was inadequate.

[5] In a much jumbled manner Vora does reference some of the logistics of the accident but it is hard to make heads or tails of what transpired from her bewildering complaint allegations.

4

suggested any bizarre conspiracy theories, any fantastic government manipulations of their will or mind, any sort of supernatural intervention."), Peach v. Laborers' Intern. Union of N. A., Civ. No. 09-450-GPM, 2010 WL 502767, 2 -3 (S.D.Ill. Feb. 8, 2010) (unpublished) ("Plaintiff's contention that 'THE MOB took over control of LIUNA is not as absurd as it first seems. … In affirming Judge Zagel's order granting summary judgment to LIUNA and other defendants in the Northern District of Illinois cases, the Seventh Circuit Court of Appeals' opinion begins: The Department of Justice believes that the Laborers' International Union of North America has been infiltrated by mobsters.") (record citation omitted). The recommendation I must make on the jumble of facts plead in this complaint and the subsequent response to the show cause order is one of dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

This appears to be Vora's first foray into the federal court of the District of Maine. However, I note that the Western District of Pennsylvania issued an order on October 21, 2008, placing filing restrictions on Vora. It explained that, "as the number of Vora's meritless pleadings in dismissed and appealed cases has escalated significantly in the past year, this court deemed it necessary to address the matter because Vora's tactics are an abuse of the judicial process, a waste of judicial resources, and a significant administrative burden on Clerk's Office personnel." In re Vora, Misc. No. 08-104, 2008 WL 4722516, 1 (W.D.Pa. Oct.21, 2008). The Court noted that as of October 21, 2008, Vora had filed sixty-five civil actions in that court via in forma pauperis status suing a host of defendants. Id. at 1 & n. 1. The Court earlier gave Vora an opportunity vis-à-vis an order to show cause to defend the potential filing restrictions. The Court "narrowly tailored" the injunctive order "to the circumstances of Vora's particular situation." Id. at 3. It prohibited Vora "from filing motions and pleadings in cases that have been dismissed and closed by the district court *and* appealed to the Third Circuit." Id. Perhaps Vora is striking

out in new territory because of this prohibition in order to advance her conspiracy claims by rehashing a 2005 auto accident involving Maine situated non-state actors and a theory that they colluded with individuals in Pennsylvania.[6] However, she is forewarned that this Court will

---

[6] Although not determinative of this screening recommendation, I note that Vora has been actively engaged in litigation in other federal venues, particularly in the Third Circuit. See e.g., Vora v. Conspirators, No. 11–1390, 2011 WL 1957702, 1 (3d Cir. May 23, 2011) ("In December 2010, Dr. Vora filed a complaint against the Appellees, alleging a conspiracy to violate her civil rights by falsely condemning her home, not allowing her to enter her home, and imprisoning her in order to deprive her of meaningful access to the courts. She sought injunctive relief. The District Court granted Dr. Vora in forma pauperis status and dismissed the complaint for lack of jurisdiction. Although the court did not cite 28 U.S.C. § 1915(e)(2)(B), the court also dismissed the complaint 'as otherwise frivolous' under that statutory provision because the complaint 'fails to state a claim upon which relief can be granted.'"); Pennsylvania v. Vora , 415 Fed.Appx. 370, 370, 2011 WL 693005, 1 (3d Cir. 2011) ("Vora's rambling discrimination claims span a lifetime of complaints that people have been trying to steal her inventions and that the employees of the Cambria County Common Pleas Court (and the police department) have fabricated criminal charges against her based on her Indian ethnicity and deliberately destroyed official 911 tapes and her own recordings of 911 calls, among other things.") (28 U.S.C. § 1915(e) dismissal affirmed); Conspirators v. Vora, 367 Fed.Appx. 296, 2010 WL 737064, 1 (3d Cir. 2010) ("Chandan S. Vora appeals from an order of the United States District Court for the Western District of Pennsylvania dismissing her 'petition for removal' pursuant to 28 U.S.C. § 1915(e)(2)(B). As she has done before, Vora filed a 'petition for removal' in the District Court seeking federal court oversight of and protection from 'conspirators,' including Cambria County police officers and other public officials, who have allegedly issued false citations against her. Vora claims that racial and religious bigotry motivated the charges. The District Court concluded that the 'petition for removal' sought to attack state court proceedings over which the District Court lacked jurisdiction.") (affirming)[6]; Cop of Johnstown Pol. Dept. v. Vora, 322 Fed.Appx. 90, 90, 2009 WL 929944, 1 (3d Cir. 2009)("Vora accuses the defendants of illegal practices including denying her rights of access to the courts, due process, and equal protection, 'by forcing me to proceed in both circuits federal and state system simultaneously, which a person in my neurological condition cannot do at all, cannot concentrate to get cases processed meaningfully in any courts, .... [and by] trying to take my life by creating such severe stress and strains with such fabricated charges out of extreme racism, trying to take my property of all kinds, even though it is strictly prohibited by the Fourteenth Amendment'."); Bureau of Motor Vehicles Killinger v. Vora, 321 Fed.Appx. 106, 107, 2009 WL 935710, 1 (3d Cir. 2009) ("In June 2008, Vora filed a notice of removal and an "Omnibus" motion to dismiss all charges of the Bureau of Motor Vehicles against her and requested that her license be reinstated. Vora attached a copy of the Official Notice of Suspension of Driving Privileges issued by the Department of Transportation, Bureau of Driver Licensing regarding traffic citation No. B51231670. The Notice informed Vora that her driving privilege was suspended effective May 21, 2008, for failing to respond to the traffic citation and noted that she owed the Bureau $93.50. Vora also attached a copy of a CT Scan report dated August 18, 2005, which was taken for a possible brain lesion.") (28 U.S.C. § 1915(e) dismissal affirmed); Italian Origin Cop from Nanty Glo v. Vora , 309 Fed.Appx. 540, 541, 2009 WL 281810, 1 (3d Cir. 2009)(" In her notice of removal, Vora alleges 'deep conspiratorial activities of Italian origin people with their supporters and workers which also include some British origin people as well as Irish people and Catholics ... to defeat me in all respects.... She accuses the defendants of illegal practices including 'fabricating diagnoses, emailing ordinances, statutes to target Vora, creat [ing] a 2nd Ramanujan, in her life, extract[ing] her inventions and discoveries, claim[ing] credit for it and then tak[ing] her life as happened to Ramanujan. She asserts that her condition is neurologic, not psychiatric, emphasizing that she has no history of psychiatric illness or of paranoid schizophrenia. She acknowledges, however, that in 1983, she suffered 'uncountable fractures with closed brain injury, resulting in internal bleeding of the brain....'") (footnote omitted) (28 U.S.C. § 1915(e) dismissal affirmed); Vora v. Verizon, Inc., Civil Action No. 02-82J, 2009 WL 3242559, 1 (W.D.Pa. Oct. 8, 2009) ("By order dated May 21, 2002, … the court dismissed Dr. Chandan S. Vora's purported 'Complaint' in the above-captioned matter for lack of jurisdiction and as otherwise frivolous. Dr. Vora's subsequent appeal to the United States Court of Appeals for the Third Circuit was dismissed on September 12, 2002.") (denying motion to reopen). This is not an exhaustive list of the cases stemming from the District of Pennsylvania. There are many more cases but not very much more needs to be said regarding Vora's over-imaginative litigious pursuit of her conspiracy claims.

follow the blueprint of the Eastern District of Pennsylvania if she conducts her litigation in a similar fashion in this district.

## CONCLUSION

For these reasons I recommend that the case be dismissed under 28 U.S.C.§ 1915(e)(2)(B).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 17, 2011